LILJEBERG, J.,
DISSENTS WITH REASONS
hi respectfully dissent from the majority’s decision to affirm the trial court’s judgment which granted, in part, defendants’ exceptions of prescription and dismissed plaintiffs’ wrongful death claims.[1]1 believe the trial court erred as a matter of law when it determined the Louisiana Supreme Court’s decision in Taylor v. Giddens, 92-3054 (La. 5/24/93), 618 So.2d 834, and subsequent appellate decisions, supported its finding that the discovery rule does not apply to wrongful death actions. I further believe the majority erred when it conducted a de novo review of the facts relevant to the application of the discovery rule, rather than deferring to the trial court’s factual findings on this issue. The' same facts apply to both the survival and wrongful death actions. The trial court found the date of discovery of the alleged medical malpractice was in late January 2015 for the survival action. Yet, the majority states the date of discovery of the alleged medical malpractice is November 4, 2014, the date of death, for the wrongful death action. For these reasons and those discussed more fully below, I believe the trial court’s judgment dismissing plaintiffs’ wrongful death claims should be reversed.
The assignment of error raised by plaintiffs on appeal is whether the trial court misapplied the law when it determined the discovery rule, the fourth prong under the doctrine of contra non valentwm, does not apply to wrongful death actions involving medical malpractice. I disagree with the majority’s decision not to address this assignment of error in its opinion, and therefore, provide some additional discussion regarding the background and relevant facts relating to this issue.
| ¡According to testimony and the certified copy of the autopsy report entered into evidence during the hearing on the exceptions, the anatomical autopsy was completed on November 5, 2014. However, the entire autopsy report was not completed on that date because blood and vitreous specimens were obtained and sent for screening. The autopsy report contains five scientific and toxicology reports, three dated December 5, 2014, one dated December 19, 2014, and a toxicology report dated December 24, 2014. Testimony presented at the hearing indicated the coroner did not issue the autopsy report until January 6, 2015. Plaintiffs received a copy of the autopsy report on January 27th or 28th, 2015, which revealed for the first time that their family member, Ralph Guidry, died as a result of a pulmonary embolism.
Following the hearing, the trial court found the discovery rule suspended accrual of the prescriptive periods for the survival actions based on its factual finding that the earliest time plaintiffs knew or should have known of the medical malpractice allegedly causing Mr. Guidry’s death was when they received the autopsy report in January 2015, over two months after the date of death on November 4, 2015. The trial court specifically found as follows:
THE COURT:
Based upon the only evidence presented to this Court, the Court is going to liberally apply the prescriptive period *1177 and maintain the cause of action for survival action, and the Court will utilize the autopsy report to show that the earliest time that the survival action could have—could have or should have been known is sometime in January. If somebody wants to give me the specific date.
MR. TOWNSLEY:
January 6th is when it was completed, and January 29th is when it was—
| .¡THE COURT:
So sometime in January they got the autopsy report which started the ball rolling of whether or not you, again, based upon a liberal interpretation of prescription, the Court will find that December is clearly within that one year of that as the earliest date, not the actual date of death.
The trial court then asked the parties to file additional briefs regarding whether a wrongful death claim is barred by a strict one year period from the date of death:
THE COURT:
However, the cause of action related to the wrongful death action, I want a legal—using that—clearly if I’m using the January date, then it survives if you win on the argument that something else should apply versus one year.
Therefore, the trial court recognized that if the discovery rule applied to the wrongful death actions, they would be timely based on its factual finding that the first time plaintiffs should have known of the alleged medical malpractice causing the death was in January 2015.
On September 7, 2016, the trial court provided a ruling from the bench as to whether the wrongful death actions were prescribed. The trial court determined that when applying contra non valentum to a wrongful death action, “the cases implicitly have done away with the argument that the discovery rule is one of the facts for the Court to consider.” Therefore, while applying the discovery rule to the survival action, the trial court rejected plaintiffs’ argument that the same rule and facts should serve to delay commencement of the prescriptive period for their wrongful death actions. The trial court declared the wrongful death claims untimely because plaintiffs failed to file them within one year after the date of death.
|/The trial court’s decision creates a situation where even when the facts establish a plaintiff does not know or should not know at the time of death of the alleged tort causing the death (in this case medical malpractice), the wrongful death prescriptive period still begins to run. This decision allows a scenario where a wrongful death action could prescribe before plaintiff has notice of facts sufficient to incite curiosity or attention that a cause of action exists. Though wrongful death actions are distinct from survival and underlying medical malpractice actions, a wrongful death action does not arise without the existence of an underlying tort of medical malpractice.[2] As discussed more fully below, I believe it is improper to reach a legal conclusion which creates a segment of plaintiffs who may lose their wrongful death claims before they know or should know of the tort creating the existence of the claim. Fur *1178 thermore, I believe it is important to directly address this legal issue to prevent any additional confusion regarding the application of the discovery rule to wrongful death claims in the future,
. It is' well-established that the doctrine of contra non valentum creates a jurisprudential exception to the running of prescriptive periods. Richards v. Choice Hotels Int'l, Inc., 13-973 (La. App. 5 Cir. 5/21/14), 142 So.3d 249, 252. La.C.C. art. 2315.2 contains language indicating the time limitation for a wrongful death claim is a prescriptive period: “The right of action granted by this Article prescribes one year from the date of death of the deceased.” [Emphasis added.] The Louisiana Supreme Court also recognizes the prescriptive nature of the time limitation to file a wrongful death action. Taylor, 618 So.2d at 841.
. [ ¿Despite the trial court’s findings, I have not located any cases expressly declaring the contra non valentum discovery doctrine no longer applies to wrongful death claims. To the contrary, in Hotard v. Banuchi, 00-1364 (La. App. 5 Cir. 1/30/01), 784 So.2d 654, 655, this Court explicitly recognized the application of the discovery rule to wrongful death actions:
Medical malpractice claims must be brought within one year from the alleged malpractice or within one year of the discovery of the malpractice. La. R.S. 9:5628. Claims for wrongful death must be brought within one year of the date of death or discovery of the negligence which caused the death. La. C.C. art. 3492. [Emphasis- added.][3]
The trial court started its analysis with the Louisiana Supreme Court’s finding in Taylor, swpra, that the prescriptive'period for ,a wrongful death action runs from the date of death, .It is important to recognize the context within which the Supreme Court rendered this decision. First, the factual scenario facing the Taylor court was completely opposite from the- scenario .facing this Court. In Taylor the plaintiff knew of the alleged medical malpractice years prior to the date -of death, whereas in the- present matter the trial court has determined plaintiffs could not have known of the alleged malpractice until they received the autopsy i’eport. Because of this factual difference, it is important to note that the • Taylor court was not faced with the issue of whether the discovery rule applies to a wrongful death action.
The Taylor court’s analysis arose from a factual situation where the plaintiff knew three years prior to his wife’s death that her doctor failed to diagnose her |fiwith cancer of the esophagus. 618 So.2d at 838. The Taylor court considered a split in, the circuits as to whether the medical malpractice prescriptive period set forth in La. *1179 R.S. 9:5628 applied to -wrongful death actions, as well as survival actions. Id. at 839-40. This presented the Louisiana Supreme Court with the dilemma of whether the prescriptive period for the wrongful death cause of action must begin to run from the date the plaintiffs’ learned of the medical malpractice and therefore, potentially prescribe even before the patient died. Id, at 841. Because of this, the Louisiana Supreme Court explained that with respect to the applicable prescriptive period, wrongful death actions must be treated differently than survival and medical malpractice actions, and determined that even when the plaintiff knows of the alleged act or omission constituting medical malpractice prior to death, the prescriptive period for the-wrongful death claim did not begin to run until the date of. death. Id. The Taylor court determined the date of discovery of the medical malpractice was inconsequential when the plaintiff had knowledge of the álleged malpractice prior to death. However, I do not believe it would reach the same conclusion if faced with the present matter where the plaintiffs are not aware of the alleged malpractice until after the date of death.
In reaching its decision, the Taylor court noted that its decision avoided’ the creation of a segment of plaintiffs who would lose their right to pursue wrongful death actions before they even came into existence:
This statutory construction and interpretation. satisfies the State’s interest in protecting the family unit which is at the core of the wrongful death statute. Comment, Wrongful Death in Louisiana: Too Often A “Cause” Without A “Right,”41 La.L.Rev. 954 (1981). It also prevents the loss of the wrongful death action to a certain class of victims (claimants), an action which was given to all wrongful death victims (claimants) by Acts of 1884, No. 71, and which have been .considered since 1884 as a compen-sable injury and a vested property right. See LSA-C.C. arts. 2315, 2315.2; Guidry v. Theriot, supra; 39 La.L.Rev. 1239, supra at 1241; 58 Tul.L.Rev. 1547, supra 1248. Cf. Crier v. Whitecloud, on rgh’g, supra, [when, an injury occurs which |7fflves the injured party a cause of action, that cause of action becomes a vested property right which is protected by the guarantee of .the due process clause; when a. person does not file suit within the prescriptive period, the person has no cause of. action and no vested property right]. Additionally, .this construction prevents the aura of unconstitutional restriction of access to the courts to a certain class of wrongful death claimants and equally protects the claimant’s property, interest by insuring they have a period in which to bring .their cause of action after it accrues. LSA-Const. Art. I, § 3, Art. I, § 22. See generally Crier v. Whitecloud, on reh’g, supra; Everett v. Goldman, 359 So.2d 1256 (La. 1978); Valentine v. Thomas, 433 So.2d 289, 292 (La. App. 1st Cir. 1983)[“Eqúal protection of the law means that state laws must affect alike all persons similarly situated.”], writ den., 440 So.2d 728 (La. 1983).
Just as the Taylor court was concerned about creating a faction of plaintiffs whose wrongful death actions would prescribe before death occurred, I believe this Court must also be mindful of providing a vague legal analysis which could servé to create a faction of plaintiffs whose wrongful death prescriptive period commences and- ends before they could or should know medical malpractice caused their family member’s death.
*1180 As noted above, the majority did not directly address the trial court’s erroneous legal conclusions. Instead, the majority cites to language from this Court’s decision in Carter v. Ochsner Clinic Foundation, 07-889 (La. App. 5 Cir. 3/11/08), 978 So.2d 562, 566, writ denied, 08-0936 (La. 8/29/08), 989 So.2d 99, noting that when a patient dies as a result of medical malpractice, the damage, i.e. the patient’s death, is immediately apparent.[4] The majority then cites to the Louisiana Supreme Court’s decision in In Re Medical Review Panel for Claim of Moses, 00-2643 (La. 5/25/01), 788 So.2d 1173, for the principle that when damages are immediately apparent, the actions prescribe one year from the date of the “alleged act, omission |8or neglect.” The majority also notes that the Taylor court concluded that the wrongful death prescriptive period runs from the date of death because that is the date the claimants are injured. The majority’s position on the discovery rule is unclear to me. On the one hand, the majority seems to indicate in its analysis that because the death, the damages resulting from the alleged medical malpractice is immediately apparent, the prescriptive period for a wrongful death action must always commence at the date of death. However, at the end of the opinion, the majority appeared to entertain and reject plaintiffs’ discovery rule arguments after conducting its own analysis of the facts.
I believe the analysis provided in the majority opinion is incomplete because in order for a prescriptive period to com-menee, the plaintiff must have more than knowledge that damage or a death occurred. The Louisiana Supreme Court, as well as this Court, recognize that prescriptive periods do not commence until the plaintiff knows or should know of three things: the damage, the tort, and the relationship between them. Bailey v. Khoury, 04-620 (La. 1/20/05), 891 So.2d 1268, 1275-76; Encalade v. Coast Quality Constr. Corp., 00-925 (La. App. 5 Cir. 10/31/00), 772 So.2d 244, 247, writ denied, 00-3229 (La. 1/26/01), 782 So.2d 634. Determination of when prescription commences under the discovery rule depends on two primary factors: (1) the date on which the plaintiff gained actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort; and (2) the date on which the “tortious act actually produces damage.” Bailey, 891 So.2d at 1284.
Therefore, in addition to knowledge of the damages, plaintiff must also have sufficient knowledge or notice that a tort or negligence occurred. Prescription does not begin to run at the first indication that the plaintiff may have suffered harm, but rather it begins to run when a plaintiff has a reasonable basis to pursue a claim |9against a specific defendant. Jordan v. Employee Transfer Corp., 509 So.2d 420, 424 (La.1987).
In Taylor, the prescriptive period for the wrongful death action ran from the date of death because the plaintiffs already had knowledge of the alleged act of *1181 malpractice. In the present matter, after conducting a hearing and reviewing the evidence and testimony, the trial court determined plaintiffs could not have known of the alleged medical malpractice until over two months after the date of death. In many instances, it is easy to discern the cause of death is the alleged medical malpractice. However, this is not always the case. I believe that failing to account for those factual situations where the alleged medical malpractice causing the death is not immediately apparent essentially creates a type of peremptive period for wrongful death claims. I do not believe this is the result the Taylor court intended when it stated the prescriptive period runs from the date of death. Just as the Taylor court found it necessary to avoid creating a class of claimants who could lose their wrongful death claims prior to the decedent’s death, I also believe it is improper for courts to imply or establish that a plaintiff must always know that medical malpractice caused the death. Therefore, I believe the majority should have recognized in its analysis that when a plaintiff does not and could not know of the alleged medical malpractice at the time of death, the discovery rule can serve to suspend the commencement of the prescriptive period.
Finally, I believe the majority erred by conducting its own independent analysis of the evidence and disregarding the trial court’s factual finding that plaintiffs could not have known of the alleged malpractice until they received the completed autopsy report. Although contra non valentwm is a legal principle, its application to the facts of the case and a determination of whether the plaintiffs were prevented from filing their claim under one of the four circumstances is an Imissue of fact. Amoco Prod. Co. v. Texaco, Inc., 02-240 (La. App. 3 Cir. 1/29/03), 838 So.2d 821, 829-830, writ denied, 03-1102, 031104 (La. 6/6/03), 846 So.2d 1096. Therefore, the trial court’s finding of fact on this issue is subject to the manifest error, clearly wrong standard of review. Id.
The same evidence, facts and circumstances apply to both the wrongful death and survival actions. Again, the survival and wrongful death actions are interrelated to the extent they both arise from the same negligence or fault, which is the medical malpractice. I believe the majority overlooked the trial court’s factual findings regarding when plaintiffs first should have known of the alleged medical malpractice, and instead determined the evidence establishes plaintiffs had facts sufficient to notify them of the existence of the alleged medical malpractice at the time of death. It is contradictory to have two different factual findings as to when sufficient knowledge existed to commence the prescriptive period for each cause of action. I believe if the majority agrees that the discovery rule can apply to plaintiffs’ wrongful death actions, then it should have deferred to the trial court’s factual findings on this issue unless manifestly erroneous.
The evidence indicates that this matter involved an elderly person who collapsed and died for reasons unknown to plaintiffs until the release of the autopsy report. In conducting its own independent review of the evidence, the majority concluded that because plaintiffs immediately requested an autopsy after the death and subsequently failed to mention their alleged inability to discover the alleged malpractice in their first claim filed with the medical review panel, they knew of the alleged medical malpractice on the date of death. I do not believe these facts are sufficient to *1182 disregard the trial court’s factual findings relevant to the. application of the discovery rule.

. Plaintiffs filed both survival and wrongful death actions. The exceptions of prescription filed by defendants sought dismissal of both causes of action. The trial court denied defendants' exceptions of prescription with respect to plaintiffs' survival action claims based on its application of the discovery rule. Therefore, the survival actions remain pending before the medical review panel.

. La. C.C. art. 2315.2 provides “[i]f a person dies due to the fault of another, suit may be brought by the following persons ... ."[Emphasis added.] Furthermore, in Taylor, supra, the Louisiana Supreme Court recognized a wrongful death action has its genesis in an act of malpractice, and that wrongful death and survival actions arise from a "common tort.” 618 So.2d at 840.

. Plaintiffs also cite to a list of cases where courts have applied the discovery rule to wrongful death actions arising from both general tort law and medical malpractice: Brown v. Department of Health and Human Resources, 498 So.2d 785 (La. App. 4 Cir. 1986), writ denied, 500 So.2d 430 (La. 1987); Quibodeaux v. Medical Center of Southwest Louisiana, 97-204. (La. App. 3 Cir. 3/6/98), 707 So.2d 1380, writ denied, 98-926 (La. 5/15/98), 719 So.2d 465; In re Medical Review Panel of Howard, 573 So.2d 472 (La. 1991); Dean v. United-Medical Center, No. 2004-CA-588 (La. App. 4 Cir. 2004); Guillot v. Daimlerchrysler Corp., 08-1485 (La. App. 4 Cir. 9/24/10), 50 So.3d 173, writ denied, 11-321 (La. 3/2/11), 58 So.3d 461; Leslie v. Shell Chemical LP, 2013 U.S. Dist. LEXIS 120215 (E.D. La. 2013); Watkins v. Exxon Mobil Corp, 12-477 (La. App. 4 Cir. 5/29/13), 117 So.3d 548, aff’d on appeal, 13-1545 (La. 5/7/14), 145 So.3d 237; McClendon v. State, 357 So.2d 1218 (La. App. 1 Cir. 1978).

. The trial court also relied heavily on the Carter decision for its conclusion that the discovery rule does not apply to wrongful death actions. The Carter court made no such statement. Rather, this Court based its decision on its finding the plaintiff "presented no evidence to support a suspension or interruption of the one year prescriptive period that began on the date of death.” Id. at 566. Furthermore, the facts in Carter involved a plaintiff who died as a result of internal bleeding after a doctor improperly inserted a catheter during dialysis. These facts are much more extreme and obvious than the current situation involving an elderly man who collapsed and died for unknown reasons.